**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**UNITED STATES OF AMERICA**

**v.** **NO. 5:22-CR-37-BJB**

**ZACHARIAS SCHLIPF**

**OPINION & ORDER ON RESTITUTION**

Zachiarias Schlipf pleaded guilty to two counts of distribution of child pornography and one count of possession of child pornography under 18 U.S.C. § 2252A. The Court sentenced Schlipf to 151 months' imprisonment, 15 years' supervised release, and statutory restitution for the identified victims. This order addresses the amount of and basis for those restitution awards.

**A.** The restitution scheme Congress enacted for victims of federal child-pornography crimes is complex. The statute requires the Court to (1) "determine the full amount of the victim's losses that were incurred or … reasonably projected to be incurred by the victim as a result of the trafficking," and (2) "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." § 2259(b)(2). Although restitution is mandatory, the statute also states that a "victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses." § 2259(b)(2)(C). So "[a]fter the victim has received restitution in the full amount of the victim's losses," "the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated." *Id.*; *see also United States v. Clemens*, 990 F.3d 1127, 1130 (8th Cir. 2021) (discussing cap on aggregate restitution).

Interpreting an earlier version of this provision, the Supreme Court held that "restitution is … proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States*, 572 U.S. 434, 448 (2014). This requires the Court to "assess … the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 459; *see also United States v. Mobasseri*, 764 F. App'x 549, 550 (6th Cir. 2019) (sentencing court's restitution order must consider "defendant's 'relative role'" in causing victim's losses). To guide this inquiry, the Supreme Court set out a number of non-exclusive, non-mandatory factors, such as "whether the defendant reproduced or distributed images," as discussed below. *Paroline,* 572 U.S. at 460. The Court also emphasized that when, as in Schlipf's case, "the victim's general losses

from the trade of her images … are the product of the acts of thousands of offenders," the restitution ordered against the defendant "would be not be severe." *Id.* at 458–59. But neither would it "be a token or nominal amount," but rather "a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.* at 459.

In response to *Paroline*, Congress amended the statutory regime to (among other things) establish a statutory minimum for each restitution award: "the court shall order restitution in an amount that reflects the defendant's relative role … but which is no less than $3,000." § 2259(b)(2)(B)). This amendment, known as the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, otherwise left the proximate-causation requirement in place. *See* Pub. L. 115-299, 132 Stat. 4383 (2018); *United States v. Jones*, 815 F. App'x 870, 882 (6th Cir. 2020). Courts have applied this statutory minimum to apply as a "mandatory minimum" in cases involving trafficking of images after the amendment's enactment. *Clemens*, 990 F.3d at 1130. "[T]he statute provides a backstop. It presumes a floor of $3,000 in harm. And courts of appeals have affirmed orders of restitution whose harm quantification was pegged to this statutory default." *United States v. Byrd*, 569 F. Supp. 3d 621, 624–25 (W.D. Ky. 2021) (citing *United States v. Mobasseri*, 828 F. App'x 278, 280 (6th Cir. 2020).

**B.** In this case, the Government seeks restitution awards on behalf of ten of the underage females whose photos Schlipf possessed—the only ten victims who submitted requests for restitution. DN 32 at 1–2. For each victim, the Government requests the amount sought by the victim. *Id.* at 10–11. Eight of ten seek a restitution award above the statutory minimum of $3,000, with requested amounts reaching as high as $10,000. *Id.* at 2.

At the sentencing hearing, the Government did not present evidence of the total loss for each victim. Nor did it supply any other basis to ascertain the victims' losses and allowable restitution. Both are statutory prerequisites to a restitution award, as discussed above. *See Byrd*, 569 F. Supp. 3d at 624 (citing § 2259(b)(2)(B) and § 3664(e)). So the Court deferred the restitution ruling to allow the Government to present the evidence underlying its request. DN 31 (citing 18 U.S.C. § 3664(d)(5), which authorizes deferral of a restitution award for 90 days to ascertain its basis).

Since then, the United States submitted a restitution memorandum detailing the claims submitted by victims (all young women whose photographs Schlipf possessed on his computer system and technically made available to other BitTorrent users). DN 34. That memorandum attaches approximately 900 pages of supporting evidence. At a hearing on August 8, the United States presented this evidence and both parties addressed the amount of restitution they deemed appropriate. DN 39.

The United States' supplemental filings provide evidence in support of the total losses incurred by nine of the ten identified victims (identified pseudonymously). DN 32 at 2; DN 34. For these nine victims, record evidence amply supports an aggregate loss determination as requested by the Government. *See* § 2259(b)(2); DN 32 (requests); Victim Loss Supplement (DN 34) at, *e.g.*, 4, 12, 31–32, 94. All nine describe the significant losses they suffered—including lost income as well as counseling, medical, and legal expenses. DN 32. The total loss amounts range from $151,671.27 to $6,778,912. DN 32 at 2. The Government's filing does not show that any of these victims have received restitution *payments* exceeding her total losses, even though some have received *awards* greater than that amount. No countervailing evidence appears in the record. And defense counsel offers no argument or evidence that would rebut this submission. Indeed, counsel conceded that the aggregate cap guarding against over-recovery didn't bar an award of restitution here. *See* DN 32 at 4–9; DN 38; § 2259(b)(2)(C). So restitution is required by the statute, § 2259(b)(2)(B), and the Court finds these nine victims have suffered the aggregate losses listed in the chart below.

**C.** But what proportion of those losses should be attributed to Schlipf? Section 2259(b)(2)(B) provides that "the court shall order restitution in an amount that reflects the defendant's relative role in the causal process." This tracks the language of the *Paroline* opinion, recounted above, which explained that "the defendant's relative causal role" turns on a number of non-exclusive factors, including "the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved … whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; [and] how many images of the victim the defendant possessed." *Paroline*, 572 U.S. at 460.

Schlipf's conduct consists of downloading videos of these nine girls (and many others not subject to a restitution request) using BitTorrent software that re-uploaded the files to facilitate future downloads by others. Plea Hearing Transcript 16:2–14; Pre-sentence Report (DN 24) ¶¶ 12–15. That's why he was charged and convicted not only for possession but also for distribution—which triggered the mandatory-restitution provision. As his attorney noted at the restitution hearing (DN 38), the precise amount of incremental harm inflicted on a distant victim by any individual download, or re-upload, is not easy to calculate. The record doesn't indicate exactly how Schlipf obtained all the images, how many other people had received or shared them before he did, and how the images were originally obtained and uploaded to the Internet. Even though he used software capable of further disseminating these images, nothing in the record indicates he was a "distributo[r]

who may have caused hundreds or thousands of further viewings," much less "the initial producer of the child pornography"—the step in the causal chain that undoubtedly caused the most harm to the victims and contributed disproportionately to the total loss amount. *Paroline*, 572 U.S. at 454. According to the record, Schlipf's downstream role—though no doubt serious and real—is akin "the acts of thousands of offenders" and is therefore less "severe" than that of others closer to the victim. *Id.* at 458–59; *see also id.* at 454 (possessor's "contribution to the causal process underlying [a] victim's losses was very minor" compared to others); *compare, e.g.*, *Mobasseri*, 828 F. App'x at 280 ("[r]ecognizing the difficulty in this setting in tracing a particular amount of a victim's losses to a defendant's conduct") *with Byrd*, 569 F. Supp. 3d at 624 ("This is not a case, like *Paroline*, in which dispersed viewers of pornography each caused fractional harm to a photographed victim who never encountered them.") (citation omitted).

Schlipf's situation, like many others, involves great uncertainty over relative causation. His type of causation falls under the "mandatory minimum" rubric described above: absent evidence allowing for a more specific calculation, courts may and likely should draw on Congress's $3,000 minimum, § 2259(b)(2)(B), as a baseline for estimating the "proportion" of his "respective causal rol[e]" in the victim's overall harm, *Paroline*, 572 U.S. at 462. How else would sentencing courts apportion a numerical percentage of overall losses to a particular downstream offender whose role is neither "nominal" nor "severe"? *Id.* at 458–59. This appears to be the classic situation for which Congress "provide[d] a backstop" to sentencing courts. *Byrd*, 569 F. Supp. 3d at 624. And the Sixth Circuit has affirmed the reasonableness of a similar approach. *See Mobasseri*, 828 F. App'x at 280 (affirming reasonableness of restitution orders based, in part, on use of the $3,000 statutory floor as a baseline).

Applying the baseline is a sensible application of the statute to the difficult proximate-harm determination asked of courts in this context. As the Supreme Court made clear in interpreting the predecessor version of the restitution provision, "courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others." *Paroline*, 572 U.S. at 462. "Congress' decision to fix a minimum loss amount in the statute" furthers this aim in an important and concrete way: it "reconciles the court's mandatory duty to impose a restitution order" with "the defendant's entitlement to a reasoned basis for the loss amount." *Byrd*, 569 F. Supp. 3d at 625 (citing *Mobasseri*, 828 F. App'x at 280, and 18 U.S.C. §§ 2259(a) & 3664(g)(1)).

In its filings and at the restitution hearing, the Government presented no arguments for a higher award based on the *Paroline* factors or any specific evidence

justifying a higher award. No specific number, percentage, or floor is apparent based on the Government's filings. And Schlipf's own contribution to the grave harm suffered by these victims is attenuated (as defense counsel argued) yet serious (as the Government explained). The statutory baseline offers a reasonable, albeit rough, reconciliation of otherwise incommensurate amounts of loss and causation. Even setting aside the statutory minimum, this amount would appear reasonable given the number of images, length of time, governmental requests, and obvious harm involved. *See Paroline*, 572 U.S. at 460, 462. So the Court orders Schlipf to pay $3,000 in restitution to each of these nine victims.*

**D.** For the tenth victim seeking restitution, however, the Government has submitted only a guardian's short and unsworn victim impact statement. Motherfull Victim Impact Statement at 2 (hard copy submission during restitution hearing). This filing does not provide any quantified information regarding her total loss amount. *Id.* Government records indicate that the victim has received three restitution orders totaling $11,000 and recovered a total of $3,700 since 2012. *Id.*

May the Court award the statutory minimum restitution amount in this situation as well? Section 2259(b)(2)(A) requires district courts to "determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim." Courts do so based on the victim's medical services, therapy, rehabilitation, transportation expenses, lost income, attorneys' fees, and other related relevant losses. § 2259(c)(2). As the statute plainly indicates, "the attorney for the Government" bears the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense." § 3664(e).

While the caselaw doesn't require utmost precision in quantification, the record must "provid[e] the court with enough evidence to estimate the victim's losses with *some reasonable certainty*." *United States v. Etheridge*, No. 22-40516, 2023 WL 5347294, at *4 (5th Cir. Aug. 21, 2023) (emphasis in original). Despite the considerable discretion available to sentencing judges in imposing the equitable (if statutorily mandated) remedy of restitution, the evidence linking the harm and the perpetrator's conduct may (in some instances) be "too attenuated." *United States v. Evers*, 669 F.3d 645, 660 (6th Cir. 2012). The "evidence of costs" may include items such as "medical bills," *Etheridge*, 2023 WL 5347294, at *4, whose "associated [costs]

* As this Court has noted elsewhere, "[t]he entry of a restitution order in these circumstances is mandatory, but the order's enforcement is another matter. The former is a duty of the judiciary; the latter primarily falls to the executive. The restitution statutes afford much broader discretion regarding when and how to enforce a restitution order, *see, e.g.*, 28 U.S.C. § 3203 *et seq.* (Federal Debt Collection Procedure Act), than they do regarding whether to enter an order in the first place, *see* 18 U.S.C. §§ 2259, 3664." *Byrd*, 569 F. Supp. 3d at 625.

must be specific and contain details as to dollars not generalities," *United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001) (quotation marks omitted). Ultimately, "the information underlying an award must have sufficient indicia of reliability to support its probable accuracy." *United States v. Sawyer*, 825 F.3d 287, 294–95 (6th Cir. 2016); *Mobasseri*, 828 F. App'x at 279 ("[T]he award is tied to the government's ability to prove the defendant's offense is the proximate cause of the victim's losses, [and] limited to the harms reasonably foreseeable to result from the defendant's conduct.") (quotation marks omitted). And "[t]hough it need not be exact, a district court's '[r]estitution orde[r] should represent an application of law, not a decisionmaker's caprice." *United States v. Villalobos*, 879 F.3d 169, 172 (5th Cir. 2018) (citing *Paroline*, 572 U.S. at 462).

Many courts have considered victim impact statements as record material appropriate to fashioning a restitution award. *See, e.g.*, *United States v. Teijeiro*, No. 22-10227, 2023 WL 5116378, at *6 (5th Cir. Aug. 10, 2023); *United States v. Johnston*, No. 2:14-cr-366, 2022 WL 17968692, at *3 (D. Nev. Dec. 27, 2022), *appeal dismissed*, No. 23-15038, 2023 WL 2947442 (9th Cir. Feb. 17, 2023); *United States v. Gray*, 641 F. App'x 462, 468–69 (6th Cir. 2016) (rejecting hearsay and reliability challenges to victim impact statement considered during a child-pornography sentencing hearing). The statement submitted here in support of the tenth victim's restitution request powerfully and persuasively describes the struggles and harms brought about by her abuse and the circulation of her video online. These include apparently significant ongoing psychological and medical costs. *See* § 2259(c)(2).

But the statement doesn't quantify those costs *at all*. Motherfull Victim Impact Statement at 2. That makes determining the "full amount of the victim's losses" all but impossible on this record. § 2259(b)(2)(A). And the combination of unknown losses and unknown offenders limits the Court's ability to ensure an appropriate allocation of proportionate causation and financial responsibility. Courts have rejected restitution requests that provide more information than this one, including "the suggested length and frequency of … treatment," because that information "appears arbitrary and thus cannot form the basis for restitution." *United States v. Clayton*, No. 18-cr-524, 2022 WL 17960764, at *2 (E.D. Pa. Dec. 27, 2022). A victim impact statement may contain "a devastating portrayal of an [individual] haunted by grotesque and unjustifiable wrongs done to her as a child," yet not supply the sentencing judge with information on which to base restitution. *United States v. Dagostino*, 520 Fed. App'x 90, 92 (3d Cir. 2013). In the end, the Government still must supply "some evidence by which to measure [the victim's] financial loss." *Id.*

Here, almost *no* evidence bears on the total loss amount of this specific victim or the proportion attributable to this specific defendant. So the Government has

failed to meet its burden to supply sufficient evidence supporting this determination, § 3664(e), and the Court cannot answer the threshold question of the victim's total loss amount, § 2259(b)(2). This prevents the Court from turning to the statutory default amount discussed above, given that the order must ensure any award corresponds to the defendant's causal proportion of the loss and doesn't result in over-recovery by the victim. § 2259(b)(2); *see Jones*, 815 F. App'x at 883 n.6 (statutory restitution must not exceed actual demonstrated losses); *United States v. Evans,* 48 F.4th 888, 894 (8th Cir. 2022) (district court must ensure victims are not overcompensated when defendants raise the issue). Defense counsel has challenged the adequacy of the record given Schlipf's downstream role (DN 38), and the record as it currently stands doesn't allow the Court to determine that $3,000 is (or is not) an appropriate award for this tenth victim.

Nor would this award, if it excludes the tenth victim, violate the statute's most basic command that "[t]he issuance of a restitution order under this section is mandatory." § 2259(b)(4)(A). By awarding $27,000 to those victims whose losses and causation are more firmly rooted in the record, "the court [has] *order[ed]* restitution in an amount that reflects the defendant's role in the causal process that underlies the victim's losses, but which is no less than $3,000." § 2259(b)(2)(B). If the tenth victim were the sole victim, directly connected to the defendant, the analysis would certainly differ. *See, e.g., Byrd*, 569 F. Supp. 3d at 624 (awarding minimum restitution amount, despite unquantified loss, based on record evidence that the "defendant abused the victim, recorded the incident, and distributed the pornographic video on social media.").

So the Court, while cognizant of the harm almost certainly suffered by this victim, lacks an evidentiary basis to order Schlipf, consistent with the statutory prerequisites, to pay her restitution at this time.

**E.** This shortcoming doesn't necessarily doom the victim's restitution request, however. Sentencing courts may defer the deadline for a restitution order so that "more complete information [can] be obtained." *United States v. Williams*, 612 F.3d 500, 512 (6th Cir. 2010) (citing *Dolan v. United States*, 560 U.S. 605, 611 (2010)). This order is the result of such an extension. Yet as the discussion regarding the tenth victim indicates, the proceedings have not crystallized in such a manner that "[a]ll the information needed to determine the requisite restitution amount [i]s available before the 90–day period had ended." *Dolan*, 560 U.S. at 609–10. That 90-day period following sentencing may be extended another 60 days to allow a victim to petition for an amended restitution order. *Williams*, 612 F.3d at 510 (quoting § 3664(d)(5)) (requiring a showing of good cause for the failure to include these loss amounts in the initial claim). Because restitution may be and perhaps likely is justified in *some* amount that is not yet ascertainable, the Court lacks sufficient evidence to order restitution to the tenth victim. So the Government or any other party may—as soon

as possible and no later than 60 days—provide more concrete, causal, and quantifiable evidence pertaining to this particular victim (should it choose) as appropriate under the statute. *See Clayton*, 2022 WL 17960764, at *3; *Etheridge*, 2023 WL 5347294, at *4.

In the meantime, however, the statutory scheme envisions a final restitution and appealable judgment. *See Dolan*, 560 U.S. at 618–19 (discussing the interaction between the typical 14-day deadline for a notice of appeal and the statutory time period(s) for awarding restitution following sentencing). So the Court enters the restitution order below despite the prospect that the Government, on behalf of the tenth victim, may seek to amend it within 60 days.

**ORDER**

The Court orders the Defendant to pay $27,000 in restitution. The United States may enforce restitution at any time. The Defendant shall make a bona fide effort to pay restitution in full as soon as practicable.

1. While incarcerated, the Defendant shall participate in the Bureau of Prisons' Inmate Financial Responsibility Program at a rate of at least $25 per quarter, or if assigned as a UNICOR grade 1 through 4 employee, at least 50% of the prisoner's monthly pay.

2. Interest shall not accrue and is waived under 18 U.S.C. § 3612(f)((3)(A) because the Defendant lacks the ability to pay interest.

3. The victims' names, total losses, and losses attributable to the Defendant are:

| VICTIM | TOTAL LOSS | LOSS ATTRIBUTABLE TO SCHLIPF |
|---|---|---|
| 1. At School/Violet | $817,627.00 | $3,000 |
| 2. Vicky/Lily | $6,008,536.29 | $3,000 |
| 3. Tara | $151,671.27 | $3,000 |
| 4. Sweetwhitesugar/Pia | $1,723,000.00 | $3,000 |
| 5. Jenny | $6,778,912.00 | $3,000 |
| 6. Lighthouse/Maureen | $1,589,800.00 | $3,000 |
| 7. Aprilblonde/April | $226,375.00 | $3,000 |
| 8. 2Crazygurls/Chelsea | $276,375.00 | $3,000 |
| 9. Marineland1/Sarah | $2,758,355.28 | $3,000 |
| Total Amount | $20,330,651.80 | $27,000 |

4. No delinquent or default penalties will be imposed unless by a further court order.

5. The amount of restitution paid to any victim shall not exceed the victim's total loss from the offense of conviction. *See* 18 U.S.C. 2259(b)(2)(C). Each victim must inform the Court when she has received the full amount of her losses.

6. All payments shall be made to the United States District Court Clerk, 601 West Broadway, 1st Floor, Louisville, KY 40202.

7. As long as the Defendant owes restitution, he shall notify, within 30 days, the Clerk of the Court and the United States Attorney's Office, Financial Litigation Unit, 717 West Broadway, Louisville, KY 40202 of: (a) Any change of name, residence, or mailing address; and/or (b) Any material change in economic circumstances that affects the ability to pay restitution.

8. This Restitution Order is incorporated into the Judgment and Conviction as if set out verbatim therein. 18 U.S.C. § 3664.

9. The Government may petition for an amendment of this order within 60 days to provide evidence supporting a restitution award consistent with the statute for the tenth victim discussed above.

Benjamin Beaton, District Judge
United States District Court

September 12, 2023