```
 1                      UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF KENTUCKY
 2                            PADUCAH DIVISION

 3    UNITED STATES OF AMERICA,      ) Case No. 5:22-CR-37-BJB
                                     )
 4            Plaintiff,             )
                                     )
 5    vs.                            )
                                     )
 6    ZACHARIAS SCHLIPF,             )
                                     ) June 14, 2023
 7            Defendant.             ) Paducah, Kentucky

 8
                     *****************************************
 9               TRANSCRIPT OF SENTENCING HEARING
                    BEFORE HONORABLE BENJAMIN BEATON
10                   UNITED STATES DISTRICT JUDGE
                     *****************************************
11

12    APPEARANCES:

13    For United States:      Leigh Ann Dycus
                              U.S. Attorney's Office
14                            501 Broadway
                              Paducah, KY 42001
15
      For Defendant:          Donald J. Meier
16                            Western Kentucky Federal
                               Community Defender, Inc.
17                            629 Fourth Avenue, Suite 200
                              Louisville, KY 40202
18
      [Defendant present.]
19

20

21
                          Terri L. Horton, RMR, CRR
22                         Official Court Reporter
                            133 U.S. Courthouse
23                             501 Broadway
                             Paducah, KY 42001
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

1    (Begin proceedings in open court at 1:21 p.m.)

2         THE COURT:  Let's go on the record in United States

3    against Schlipf, Criminal Case 5:22-37.

4    Who's here for the United States?

5         MS. DYCUS:  Leigh Ann Dycus, Your Honor.

6         THE COURT:  And for the defense?

7         MR. MEIER:  Don Meier for Mr. Schlipf.  He's present

8    to my left.

9         THE COURT:  Okay.  After we end this hearing, I think

10   I need to speak with you, Mr. Meier, and the government about

11   the Nally case, just briefly.

12        MR. MEIER:  Yes, sir.

13        THE COURT:  So we won't do it now, but I'm just saying

14   it so I don't forget it, okay?

15        MS. DYCUS:  Yes, sir.

16        THE COURT:  All right.  Mr. Schlipf, how are you

17   doing?

18        THE DEFENDANT:  Awake.

19        THE COURT:  Okay.  Do you remember the last time you

20   were here I encouraged you to get my attention or Mr. Meier's if

21   you needed us to pause, slow down, give you a break, or anything

22   like that?  Well, the same ground rules apply today, okay?

23        THE DEFENDANT:  Okay.

24        THE COURT:  All right.  I've reviewed the presentence

25   report and the sentencing memos, and I believe the United States

1   has dropped its objection to the lack of the five-level

2   enhancement.  Is that right, Ms. Dycus?

3            MS. DYCUS:  We did, Judge.

4            THE COURT:  Okay.  And you have no other objections;

5   correct?

6            MS. DYCUS:  That's correct.

7            THE COURT:  Mr. Meier, you have none?

8            MR. MEIER:  No, sir.

9            THE COURT:  All right.  Mr. Schlipf, did you have a

10  chance to read through the presentence report and discuss it

11  with your lawyer?

12           THE DEFENDANT:  I did.

13           THE COURT:  Okay.  We'll adopt it and place it in the

14  record under seal.

15      Let's talk about the statutory and Sentencing Commission

16  guidelines regarding sentencing, which Congress has instructed

17  should be a sentence sufficient, but not greater than necessary,

18  to serve the purposes of the federal sentencing laws.  You pled

19  guilty to Counts 1 through 3 in the indictment.  1 and 2 are

20  counts for distribution of child pornography.  Count 3 is the

21  offense of possession of child pornography.

22      I believe, Ms. Dycus, we have a maximum sentence of 20 years

23  in prison, life supervised release, and a $250,000 fine for each

24  count; is that right?

25           MS. DYCUS:  One second, Your Honor.

1          THE COURT:  Actually, I may have misread my notes.  I

2     think it's ten years for the third count.

3          MS. DYCUS:  Third count is not more than 20 years.

4     Counts 1 and 2 are not less than 5 years, no more than 20.

5          MR. MEIER:  That's correct.

6          THE COURT:  And the third count was maximum 20,

7     without the 5-year minimum?

8          MS. DYCUS:  That's correct.

9          THE COURT:  Okay.  So I had it right the first time.

10     All right.  Do we all agree that Mr. Schlipf lacks the

11     ability to pay a fine and, therefore, won't impose one, setting

12     aside restitution and special assessment?

13          MS. DYCUS:  That's correct.

14          THE COURT:  Mr. Meier, you agree, I take it?

15          MR. MEIER:  Yes, sir.

16          THE COURT:  All right.  So we won't impose a fine.

17     Mr. Schlipf, there will be other mandatory financial components

18     to the sentence, however.

19     All right.  Let's talk about the advisory guidelines range.

20     We have a -- please listen carefully and make sure I have this

21     right and that we all agree.  We have a base offense level of

22     22, a two-level enhancement because the material involved minors

23     under the age of 12 under 2G2.2, a two-level enhancement for

24     knowingly engaging in distribution by use of peer-to-peer file

25     sharing software, a four-level enhancement because the material

1   portrayed sadistic or masochistic violence or abuse or

2   exploitation of an infant or toddler, a two-level enhancement

3   for the use of a computer or interactive computer service, a

4   two-level enhancement for possessing 600 or more videos --

5   images.

6           MR. MEIER:  Five-level enhancement on that, Judge.

7           THE COURT:  Right.  Under 2G2.2(b)(7)(D), it should be

8   five levels; right, Ms. Dycus?

9           MS. DYCUS:  That is correct.

10          THE COURT:  Okay.  Which gives us an adjusted offense

11  level of 37, with a two-level reduction for acceptance of

12  responsibility and an additional one-level reduction, if the

13  government makes the motion, for assisting authorities in the

14  investigation or prosecution.

15          MS. DYCUS:  We would, Judge.

16          THE COURT:  Which brings us to a total offense level

17  of 34.  We have no criminal history score, placing us in the

18  category of I.  That gives us a guidelines range of 151 to 188

19  months -- wait.

20      Okay.  All right.  I think there may be a typo in the

21  presentence report.

22      No.  I'm sorry.  I was -- I apologize.  I was thrown because

23  I was looking at the government's calculation on page 22.

24      All right.  So, Ms. Spayde, do you agree we land at an

25  offense level of 34, category of I, for 151 to 188?

```
1              PROBATION OFFICER:  Yes, sir.

2              THE COURT:  Okay.  I apologize.  My notes are just a

3   bit of a mess today.

4       All right.  There's a mandatory special assessment of $300.

5       Has there already been a preliminary order of forfeiture in

6   this case, I believe?

7              MS. DYCUS:  There has, Judge.

8              THE COURT:  Yes.  And perhaps an amended one as well?

9              MS. DYCUS:  Yes.

10             THE COURT:  Okay.  Is there any objection to

11  forfeiture, Mr. Meier?

12             MR. MEIER:  No, sir.

13             THE COURT:  Okay.  And restitution is what I want to

14  make sure we're on the same page about.  So, here, the

15  government -- on page 3 of your sentencing memo, Ms. Dycus, you

16  list, I guess, ten identifiable victims, the number of images --

17  or videos associated with those victims that were possessed in

18  this case, and then, I guess, whether there was a restitution

19  request and, if so, a specific amount for each victim.

20      And so what is the United States' position on restitution

21  here?

22             MS. DYCUS:  Judge, the restitution requested section

23  of the chart on pages 3 and 4 came from their victim impact

24  statements and the restitution packets that were provided in

25  this case.  So, for example, Number 1, that was -- they
```

1    requested $10,000.  I also spoke with the representatives after

2    these requests came in to see if there were amounts they would

3    agree to, and there were in some of these cases had there been a

4    plea agreement.  Without the plea agreement, what is listed in

5    the restitution request is what they had asked for.

6        But in some of these cases, we have talked to these

7    representatives and could ask for a lower amount, and I can list

8    our agreements with the representatives.  So for Number 1, their

9    request to the Court was $10,000 in restitution.  When I spoke

10   with them, I made them aware there were four videos of the

11   client that they represent, and they would agree to accept the

12   $3,000 in that case.

13        THE COURT:  But you don't have agreement for all ten?

14        MS. DYCUS:  Not all of them, but in some of them we

15   do, and I can go through those.

16        The second one where there are seven videos of their client,

17   they had agreed to 4,000.  And I think the request initially was

18   for five, but they would agree to four.

19        The third one listed there, there were two videos of their

20   client, and $5,000 is what was requested.  And their initial

21   request was, I think, between 3 and 20 thousand dollars, but

22   they would accept 5,000 in this case.

23        THE COURT:  All right.  Can you just rattle off any

24   other agreed amounts?

25        MS. DYCUS:  Yes.

1          THE COURT:  Or not agreed, but stipulated.

2          MS. DYCUS:  For Victim Chelsea, so one image.  It was

3     5,000.  For Victim Jenny, it was 4,000.  For Victim Tara, 4,000.

4     For Victim Vicky and At School, each of these is requesting

5     $10,000 with the entry of the open plea.

6          THE COURT:  And the last two?

7          MS. DYCUS:  And then on Marine, they are again

8     requesting $10,000 on the open plea.  And then the last one that

9     we had information on, there was no amount specified.  There is

10    one video, and we would request 3,000.

11         THE COURT:  Okay.  And there's a question of the

12    special assessment, and what is the United States' position on

13    that?

14         MS. DYCUS:  That would apply, I believe, if he was

15    non-indigent, Judge.

16         THE COURT:  So your position is we don't have -- we

17    won't deal with the special assessment because of indigency?

18         MS. DYCUS:  Yes.

19         THE COURT:  All right.  Anything else you want to

20    spell out before I talk to Mr. Meier about this?

21         MS. DYCUS:  No, Judge.  We would stand on what was

22    submitted by the victims and what they've requested here today.

23         THE COURT:  All right.  Mr. Meier, I take it you agree

24    that no special assessment is called for based on indigency?

25         MR. MEIER:  Yes, sir.

1          THE COURT:  Okay.  Does probation agree with that?

2          PROBATION OFFICER:  Yes, Judge.

3          THE COURT:  All right.  So we won't impose that, and

4     we can set that to the side.

5       As for the restitution request, Mr. Meier, do you agree that

6     some amount of restitution is required for each of the victims

7     who have participated?

8          MR. MEIER:  Conditionally, Judge, I think that's

9     likely.  If you look at 18 U.S.C. 2259, which I think controls

10    this, there's a number of other factors.

11      You know, I certainly have no reason to doubt anything

12    Ms. Dycus has said about what they're requesting and how many

13    videos from that particular series was possessed, but, you

14    know -- and I understand that there's a $3,000 minimum, but I

15    think even that is conditional.  My understanding is each

16    victim's total losses needs to be calculated, and I think that

17    *Paroline* is the leading case on that subject.

18      A couple things.  Once their total losses have been

19    calculated, they can't have already recovered their total

20    losses.  So I don't know -- for example, if a series has been

21    out for 10 or 20 years and they have recovered judgments from

22    any number of defendants, 2259(c) indicates that they can't

23    receive any amount greater than what their loss total is .  They

24    can't --

25          THE COURT:  Can't over-recover.  Hold on.

1      Ms. Dycus, do you have any information on the total amount

2   of recovery?

3              MS. DYCUS:  I don't, Judge.

4              THE COURT:  Okay.  Go ahead.

5              MR. MEIER:  So, you know, I don't doubt that they

6   probably have some restitution amount given the nature of the

7   case and counseling and whatever, but the fact is I don't know

8   what it is.  We don't have any proof of that.  We just know that

9   they are represented by a law firm or someone who has filed

10  these suits, and -- you know, because then once you determine

11  what the full amount of loss, if there is some other loss that

12  is owed to them, you then have to determine the defendant's role

13  in the causation of these injuries.

14     And, you know, case law sets out a number of factors:

15  Whether there was distribution, which there was in this case;

16  you know, whether there was -- the total amount; whether the

17  person was involved in producing, you know.  And I think once we

18  get to that standpoint -- when you start looking at it from that

19  angle, you'll see that Mr. Schlipf had absolutely nothing to do

20  with the production of these videos.  He wasn't involved in any

21  active online chat community or trading group.  It was on a

22  platform that could have been and was downloaded by authorities.

23  But I think every single factor, I believe, once the Court were

24  to look into that, would mitigate toward a minimum of $3,000,

25  assuming that they haven't already been fully compensated for

1    their losses.

2        So, A, I don't think there's sufficient proof of their

3    losses.  Just what they request, I don't think, is sufficient.

4    And then I think if we were to get to that point, I think

5    there's a number of reasons why the $3,000 would be easily

6    sufficient, if not more than sufficient.

7            THE COURT:  Well, the 3,000 floor is the easier part

8    for me because the statute says, which is no less than $3,000.

9    So it seems like -- I'm comfortable based on the statutory text

10   with the final of those three variables to fill in, and what is

11   tripping me up is the initial calculation of the full amount of

12   a victim's losses, which, you know, you could, you know, with a

13   straight face, I guess, describe it as incalculable,

14   potentially.

15       And then the -- and this question of over-recovery is one in

16   which I think the record is silent as far as I can tell now.

17   The government has the burden of establishing the loss amount.

18   I don't know that the government has the burden of establishing

19   the lack of over-recovery, though certainly it's in the United

20   States' interest to apply the statute by its letter.  It seems

21   to me that if we could solve for the rest of this equation that

22   before a judgment is entered, perhaps the United States could

23   file something supplemental with some basis regarding the lack

24   of over-recovery, and perhaps that would be a way to address

25   that risk.

1          Just on that specific point, do you have any reaction,

2    Ms. Dycus?  Are you familiar with how the Department of Justice

3    handles this?

4               MS. DYCUS:  In some of these cases, Judge, in their

5    victim impact statements or their files, they will include what

6    has been recovered.  In these cases, I did not notice that in

7    the impact statements or the restitution packets that were

8    presented, so we don't have that information.

9          However, in talking to the representatives, again, no one

10   shared with me that they have already been compensated in full

11   for their full amount of losses, which I doubt, but I understand

12   we at this point don't have anything in the record that says

13   that.  I can reach back out to them -- I have contact

14   information for them -- and ask what the -- you know, how much

15   they have recovered for the ones that have attorneys and that

16   want to be contacted.  I can reach back out to the ten we've

17   listed and see if we can get something filed.

18              THE COURT:  And I don't know that we necessarily need

19   the specifics, but, you know, right now the record is silent.

20   And if there's a way just to provide some assurance that this

21   isn't an over-recovery situation, then that might be helpful.

22   Of course, that backs us into the initial question of

23   calculation of total losses.

24         Do you know, Ms. Dycus, if any of these victims have

25   received restitution in other cases such that some other judge

1   previously would have assigned a loss amount based on a record

2   in another case?

3      One of the many aspects of this situation that makes this

4   restitution statute tricky is that it doesn't seem to -- it

5   contemplates over-recovery and, therefore, recovery in multiple

6   cases, but it doesn't seem to allow for, you know, one

7   assessment of a total loss amount and so is in some ways in

8   conflict with itself, asking an individual sentencing judge to

9   calculate this loss amount perhaps without regard to what

10   another judge might have already determined.

11        MS. DYCUS:  And I don't, Judge.  I don't have that

12   information.

13        THE COURT:  Mr. Meier?

14        MR. MEIER:  I mean, we don't -- I mean, I looked at

15   that *Paroline* case, which made it as clear as mud to me.

16   What -- the case pretty much indicates that they're not going to

17   make any set rules.  They suggest a number of things, such as

18   the number of defendants convicted -- I have some notes here --

19   the reasonable prediction of the number of future offenders

20   likely to be caught and convicted.  How that could possibly be

21   calculated --

22        THE COURT:  But these factors go more to the

23   approximate contribution, not to the total loss amount; correct?

24        MR. MEIER:  True, true.  The loss -- yeah.  The total

25   loss amount, other than the catchall phrase in the statute, I

1    think those factors are set out.  I don't think I copied that

2    statute, though, today.

3        But yeah.  I mean, there's -- you know, what that amount is,

4    I guess, could be, you know -- but, you know, psychological

5    counseling, attorneys' fees --

6            THE COURT:  But, anyway, you're not aware of --

7            MR. MEIER:  I don't know what that --

8            THE COURT:  -- guidance on how one or successive

9    courts are supposed to approach the question of total loss?

10           MR. MEIER:  No.

11           THE COURT:  Okay.

12           MR. MEIER:  I'm really not.

13           THE COURT:  Okay.  So I think what I'd like to do is

14   carry on with the sentencing hearing.  We can cover the rest of

15   the ground we need to.  I may take a brief recess, and then we

16   could come back to this with, with luck, a little firmer footing

17   on the restitution question.

18       Is that fair, Ms. Dycus?

19           MS. DYCUS:  It is, Judge.

20           THE COURT:  Is that all right with you, Mr. Meier?

21           MR. MEIER:  Yes, sir.

22           THE COURT:  All right.  So let's put a pin in that.

23       And we don't need to have a sealed portion of the hearing

24   because there's no plea agreement in this case.  So let me just

25   ask the government to address the 3553(a) factors and the

1    sentence it believes most appropriate here.

2              MS. DYCUS:  I will, Judge.  I'll stand mainly on our

3    memo and highlight a few things within the sentencing factors.

4    So the nature and circumstance of the offense, the need for the

5    sentence imposed to reflect the seriousness, to afford adequate

6    deterrence, protect the public, and provide needed correctional

7    treatment, Your Honor.

8         In this case, we're asking for a sentence of 180 months.

9    It's within the guideline, keeping in mind that the minimum for

10   Counts 1 and 2 is 5 years for distribution.

11        I read Mr. Meier's request for a variance down to 60 months

12   because of the stated unfairness of the guidelines.  I disagree

13   in this case.  I think the guideline is on point with the

14   seriousness of this offense.  We are talking about an offender

15   who had over 700 videos of child pornography.  These are not

16   still images.  As the Court is aware, these videos can be screen

17   captured and cut down and spliced time and time again, creating

18   new videos that are out there, that, again, revictimize these

19   children.

20        And in this case, all of the videos that are reflected in

21   the presentence report, the sampling of them, these are videos

22   of extreme sexual abuse that's being perpetrated against

23   children.  These are not still images of a child.  And while,

24   you know, one is no less harmful than the other to those

25   victims, in this case, it's particularly egregious.  We're

1   talking about very sadistic behavior that is depicted in these

2   videos.

3       I think it is also telling in this case as to the

4   seriousness and nature and circumstances of this offense that

5   when they went in for the search warrant, they found -- and for

6   lack of a better term -- child-sized sex toys, and that is

7   depicted in the presentence report as well.

8       I think this is a very serious case and why we are asking

9   for a serious sentence.  I think I calculated out the total

10  number of images that would be taken from the guideline, and

11  we're talking about -- I think it was over 53,000 images that

12  would equate to these videos.  The guideline goes up to a

13  six-level enhancement for over 600 images.  We're well above

14  that.  And there's no further increase.

15      So I don't think that the sentencing guidelines, as

16  Mr. Meier alluded to in his memo, are unfair as they apply to

17  Mr. Schlipf.  I think he ticks all of these boxes and that the

18  enhancements apply.  And I think a five-year period of

19  incarceration, the minimum in this case for even one count,

20  would be inappropriate as to his rehabilitation in a prison

21  setting when we're talking about these serious crimes against

22  children and having these videos, Your Honor.

23      So we would ask for a sentence of 180 months.

24          THE COURT:  Okay.  Thank you.

25      Mr. Meier?

1          MR. MEIER:  Judge, the images involved here are,

2     without a doubt, disgusting and illegal, and that's the nature

3     of this kind of case and that's the reason why the guidelines --

4     the base offense level is as high as it is.  Surely, as you

5     know, we're going to discuss, there is trauma involved in these

6     kind of cases, but what we are using to calculate what is more

7     than the typical case and what deserves much more punishment

8     just doesn't bear any logical -- just doesn't go back to the

9     seriousness of the offense.

10         Whether -- if a child is abused in the manner that are

11    depicted in these images, they got abused in that manner, and it

12    wasn't by Mr. Schlipf.  Let's be clear about that.  Whether

13    somebody was there with an old-fashioned Polaroid camera,

14    whether they had their iPhone out taking a picture, or whether

15    they had a video, the abuse was the same, okay?  And as I said,

16    Mr. Schlipf did not perpetrate that abuse.

17         I have represented in state court countless number of people

18    charged with perpetrating this abuse, and it is still a shock to

19    me to this day to come to federal court and find that people

20    that are looking at the pictures are sentenced in many

21    instances, if not most instances, to more time than perpetrators

22    of the abuse.  It is mind boggling to me.

23         And, again, I say that not to minimize the nature of this

24    offense, all right?  You know, when you put down in words what

25    was -- or view any of these photos, yes, you can see why we are

1    in criminal court for this.  But let's not lose sight of the

2    fact that Mr. Schlipf was viewing the pictures.

3        And I believe that he is -- you know, he has distribution

4    convictions and there was distribution in this case, but it is

5    at the very -- in my opinion, in the very lowest realm of

6    possible distributions.  And we discussed with Mr. Schlipf prior

7    to court, you know, prior to entering his plea, whether he

8    wanted to contest that.  There was a software, Deluge software,

9    using -- that was used for this BitTorrent thing that downloads

10   images faster.  I'm not much of a computer person, but my IT guy

11   explained it to us.  The bottom line is the default setting so

12   that someone else couldn't download from your computer was on.

13   He had not changed it.  And you have to go through a number of

14   steps to change that setting.  And a good argument can be made

15   that, you know, when you use that software, you are aware that

16   other people may have it.

17       So, therefore, distribution was appropriate.  I'm not saying

18   it was not appropriate.  But it is at the lowest level.

19   Mr. Schlipf wasn't involved in chat rooms and actively trading

20   this material back and forth with other people.  He was a

21   consumer and he was looking at it, and sadly he found it

22   enticing.

23       When you look at -- and I'm not going to go -- you know,

24   I've made this argument before.  The Court has probably seen

25   similar presentence reports.  I tried to update my arguments

1    with the 2021 Sentencing Commission report from the 2012

2    Sentencing Commission.  They basically said the same thing.

3    But, I mean, what, use of computer, 95, 96 percent.  S&M type

4    images, 97 or 98 percent.  Prepubescent is like 99 point

5    something percent.

6         So it is an antiquated guideline system that even the

7    Sentencing Commission recognizes needs to be updated because you

8    are taking factors that are present in virtually every single

9    case and making them a special specific condition that is

10   aggravating, above and beyond an already high base guideline.

11        And as an example, I point out if you just forget about the

12   images, if you give him the most -- if you give him the most

13   increase for images but you disregard the use of a computer

14   which is in every case, the prepubescent images which is in

15   every case, and the S&M images which is in virtually every case,

16   that puts you down to a minimum of 63 months right there, still

17   giving the maximum increase for number of images.

18        And speaking of number of images, again, the guidelines just

19   arbitrarily say, well, each video clip -- a minute, two minutes,

20   however long it is -- we're just going to say it's 75 images,

21   just arbitrarily assign a certain number of images.  And so they

22   do without, as far as I know, any empirical data to support

23   that.  I guess, you know, if you cut down every second, it could

24   be, but is that -- you know, does that logically make it that

25   much worse, his conduct, which is already bad, that much worse?

1       But, again, even counting that, just disregarding some of

2  these other factors that don't make any difference, you can get

3  down to 63 months with a guideline sentence.

4       And then specifically with Mr. Schlipf, you're talking about

5  a gentleman that has never -- as far as I can tell doesn't have

6  so much as a traffic ticket.  And it's not like he just turned

7  18.  He doesn't have any record at all.

8       He has a history of a somewhat tough upbringing.  He's had

9  autism that probably should have been diagnosed from a young

10  age.  He recognized the situation himself when he came to

11  Paducah on his own.  He sought mental health counseling at Four

12  Rivers on an outpatient basis and was receiving that on his own.

13  As a result, he was always able to keep a job and to -- other

14  than this very significant case, not to engage in any kind of

15  criminal behavior and go about his life and attempt to deal with

16  the psychological and personal issues that he had.  And he was

17  doing that.

18       You know, if you look at -- and I'm not going to read my

19  report, but -- my presentence -- my report, I'm not going to go

20  over it again, but the bottom line is, even if you look at what

21  the Sentencing Commission suggests that you look at, you'll see

22  that he weighs in on the lower side.  He doesn't have any

23  history of dangerous sexual behavior.  He wasn't engaged in the

24  pornographic chat rooms and communities.  He did have a large

25  collection in terms of the videos, but, again, I think my

1    recollection is the number is 77 or 79 percent of all

2    collections meet that high threshold of over 600 images.  In

3    this case, it was 700 or 800 videos.

4         So when you're talking about a man who has never spent a day

5    in jail, has never had any opportunity to engage in

6    rehabilitation, who has shown before this case that he is open

7    to counseling, given the fact that he sought out mental health

8    treatment when, you know, no criminal case was pending -- it was

9    totally on his own.  He's motivated to get treatment.  It's not

10   been shown that it won't work.  And to give him a 15-year

11   sentence for what is clearly disgusting behavior but it is not

12   behavior that -- and certainly a first offense is something

13   where you should throw away the key and give up on this young

14   man.  And I would ask for a sentence of five years, which I

15   think easily meets all the 3553(a) factors.

16             THE COURT:  Okay.  Thank you.

17        Mr. Schlipf, would you like to say anything today?

18             THE DEFENDANT:  I would.  I have never in my life set

19   out to hurt anyone, nor do I want to do so.  What I need is

20   therapy, not to be thrown in a box forever.  I would be far too

21   happy to receive that therapy.

22        I'm sorry.  I'm a little overwhelmed.  I don't really know

23   what else to say.

24        Thank you.

25             THE COURT:  Okay.  All right.  What I'd like to do is

1   take a recess in this hearing, and I want to make sure we get

2   the sentence right and I want to make sure we get the

3   restitution right.

4      So, Mr. Meier, do you have another case today?

5         MR. MEIER:  I have something which I anticipate will

6   be extremely brief with Mr. Hancock.

7         THE COURT:  Which case is that?  Vandergriff?

8         MR. MEIER:  I think it's Kyler Burse.

9         THE COURT:  Okay.  Coming up next.

10      All right.  Well, let's move on from this one.  Mr. Schlipf,

11   we're going to take -- we're going to address some other things,

12   and then I'll call you back here in a bit to wrap up your

13   hearing, okay?  So we're going to take a recess in this, and

14   we'll be back with you shortly.

15      (Recess at 2:02 p.m. until 2:33 p.m.)

16         THE COURT:  All right.  Thank for your patience,

17   Mr. Schlipf.

18      So I don't know that we can get all the way to a restitution

19   award that fully conforms to the statute based on the record

20   that we have at the moment, but we have a statute that allows us

21   to complete the sentence and address restitution, I believe,

22   within 90 days.

23      Ms. Dycus, is that correct?

24         MS. DYCUS:  That's correct, Judge.

25         THE COURT:  So I think we ought to do that here.  I

1    acknowledge that we're spending a lot of time parsing a statute

2    regarding restitution for victims who aren't in the court here

3    with us and with a defendant who we've already deemed indigent,

4    and that may in some sense strike as, I don't know, an empty

5    exercise, but these are obviously very serious offenses.  The

6    victim impact statements, the request for relief are quite real,

7    and you don't have to read too many of them to understand the

8    very real harm that's done perhaps not in direct production but

9    in the creation of a market for this awful material.

10       So I think we owe it to ourselves and we owe it as those

11   sworn to implement these statutes correctly to take a beat and

12   make sure that we are not -- that we're doing our level best to

13   carry out the well-meaning, if difficult, restitution statute

14   that Congress has enacted here.  So could we reconvene in, say,

15   60 days, Ms. Dycus?

16       And in that time, I would be -- I would ask the government

17   to pull together information on the two factual questions that I

18   think are unanswered as we sit here today.  One is how to

19   calculate total losses, what is the United States' position on

20   that.  Surely given the non-trivial number of these

21   prosecutions, there is an official position of the United States

22   and some guidance that the criminal division can offer, if it's

23   not at your fingertips already.

24       I think a subset of that question is to what extent, if any,

25   does a prior court ruling on loss amount for any of these

1   victims in other cases inform this Court's later answer to the

2   same question about total loss for that particular victim.  I

3   can imagine different answers to that question, and I'm curious

4   what the United States' position is.

5       The second question is whether there is any risk of an

6   overpayment, as Mr. Meier described.  It's not as clear to me

7   that that is strictly the government's burden, but as I

8   mentioned earlier, it's something that the government and the

9   victims, you know, ought to address to the extent possible.

10      And the third question, I believe we have an answer in terms

11  of teasing out the defendant's proportionate contribution to

12  that overall loss, which is the $3,000 floor set out in the

13  statute.  This is something that I've written about in the Byrd

14  case from a couple years ago.  The United States may disagree

15  with me on that, but at least that gives you an idea of how I

16  think or thought at that time, at least, was the way to read the

17  statute.

18      Mr. Meier, obviously this is the government's burden.

19  You're free to file anything you'd like or confer with the

20  government, but what do you say we come back in August and

21  address the restitution issue --

22              MR. MEIER:  Yes, sir.

23              THE COURT:  -- but conclude the sentencing today?  Is

24  that fair?

25              MR. MEIER:  Yes, sir.

1          MS. DYCUS:  Yes.

2          THE COURT:  Okay.  All right.  And, you know,

3    Ms. Dycus, I'm sure you understand and I hope your colleagues

4    will as well, I'm not trying to be a stick in the mud here, just

5    trying to get this right.  This comes up often enough that it

6    is, I think, worth a little bit of our time to understand better

7    how the United States thinks this statute ought to operate or

8    does operate, even setting aside the independent reason that we

9    just need to get it right in this particular case.

10         All right.  So we're going to withhold judgment on the

11    restitution question, and we'll be -- chambers will be in touch

12    to schedule something on that, but it's likely to be, I think,

13    the first or second week in August.

14         All right.  As for the sentence that's appropriate here,

15    this is a difficult question, and I appreciate what everyone has

16    offered already.  There are certainly strong arguments based on

17    the seriousness of the offenses and the serious harm not only to

18    the victims but the harms that ripple through their families and

19    society more generally.

20         There are serious considerations regarding the length of

21    time we're talking about in terms of the guidelines range.  No

22    one should cavalierly consider 151 or 180 months of someone's

23    life, in particular someone who has not had a previous run-in

24    with the criminal justice system.

25         I think the appropriate way to consider the history and

1   characteristics of the defendant, which include a law-abiding

2   past and some difficulties, as well, in your family life and

3   personal life and the seeking of -- seeking out of treatment in

4   the past, as you describe, Mr. Schlipf, alongside the awful

5   nature of the videos at issue here and, more importantly, the

6   harm that was done to the extremely vulnerable members of

7   society who were videotaped, who were abused, there's no denying

8   the contribution, even if a degree or two removed down the chain

9   from the production of these sorts of videos, is quite relevant

10  to demand and, therefore, the creation of the material as well

11  as the inherently corrosive and evil nature of the existence of

12  this material in society.

13      So I think certainly the law calls for a serious sentence

14  and one above the statutory minimum for possession.

15      I do think Mr. Meier's point regarding the nature of the

16  distribution, which supports the first and second counts, is

17  well taken in terms of, yes, this is distribution; yes, it

18  facilitates access of others to these videos.  But if you're

19  going to plot out a scale of culpability or involvement or

20  active distribution, I believe the record supports Mr. Meier's

21  position that this would be at the low end in terms of

22  culpability and affirmative action to that end since it all was

23  the function of the computer programs at issue and not active

24  communication or active sharing or trading, as Mr. Meier

25  described.

1     So I think we have a situation in which there's a basis for

2   situating the sentence at the low end of the guidelines range

3   despite the numerous, numerous videos and their egregious

4   nature.  I don't think we should go -- I don't think there's a

5   basis for going beneath the guidelines range here, but I do

6   think there's an articulable reasonable basis for going at the

7   lowest end for the reason I said regarding the production -- or

8   the type of dissemination that we have here and the lack of

9   production.

10    So I'll sentence you, Mr. Schlipf, to 151 months in prison

11   for Counts 1 through 3.

12    Upon release, you'll be placed on supervised release for a

13   term of 15 years.  And in a case like this, as I'm sure you know

14   and as the presentence report describes, there's a lengthy

15   number of conditions -- special conditions of release that

16   you'll need to abide by.  Those include a search condition for

17   the probation officer, an initial computer search by probation,

18   and future searches of computers based on reasonable suspicion

19   of a violation of the terms of these release conditions,

20   installation of software on the computer or computers for the

21   purpose of monitoring or restricting access, participation in

22   and abiding -- and behavior consistent with the terms of the

23   computer restriction and monitoring program.

24    You should not use computers until they are examined,

25   monitored, processed by the probation office unless necessary

1    for employment.  You are restricted from using a computer not

2    subject to monitoring by probation.  You'll need to provide

3    probation with accurate information about your computer system,

4    passwords, and IP address.

5         You're not to be employed in a job or volunteer activity

6    that would bring you in contact with individuals under the age

7    of 18 unless you have preapproval from probation.  You're not

8    allowed to rent a post office box without preapproval by

9    probation.  You're not allowed to view any form of pornography

10   depicting sexually explicit conduct or frequent any place where

11   this is the primary product for sale or entertainment.

12        You'll be subject to a polygraph condition.  You'll have to

13   comply with the sex offender registration laws in the state

14   where you live.  You'll need to provide the probation office

15   with access to financial information they request, and you'll

16   need to participate in sex offender counseling.

17        Did you have a chance to go over these conditions,

18   Mr. Meier?

19             MR. MEIER:  Yes, Judge.

20             THE COURT:  And anything we ought to clarify or

21   address regarding them for you or your client?

22             MR. MEIER:  Not at this time.

23             THE COURT:  Okay.  Anything on that score, Ms. Dycus?

24             MS. DYCUS:  No, Judge.

25             THE COURT:  Ms. Spayde?

1            PROBATION OFFICER:  No, sir.

2            THE COURT:  Okay.  Is there anything about the

3    sentence that we haven't sufficiently addressed?

4            MS. DYCUS:  No, sir.

5            MR. MEIER:  Nothing further, no, sir.

6            THE COURT:  Okay.  I think I already mentioned the

7    mandatory special assessment of $300.  And, of course, we'll

8    come back in August to address the restitution issue.

9        I guess we were here on an open plea, so there's no waiver

10   of appellate rights, Mr. Meier.  But I expect you've discussed

11   with your client if he chooses to appeal, he needs to do so

12   within 14 days of the entry of judgment in this case, appealing

13   either the conviction or the sentence.

14           MR. MEIER:  Yes, sir.

15           THE COURT:  Is there anything else that we ought to

16   discuss today?

17           MR. MEIER:  No.  I've discussed it, and I'll discuss

18   that with him further, and we'll make a decision on that.

19           THE COURT:  Okay.  Ms. Dycus, for the United States?

20           MS. DYCUS:  Nothing further, Judge.

21           THE COURT:  Ms. Spayde?

22           PROBATION OFFICER:  No, sir.

23           THE COURT:  Okay.  Mr. Schlipf, I know this is an

24   exceedingly difficult day.  No one here relishes in the type of

25   time we're talking about, but please know that we're doing our

1    best to apply the law as it governs.  So we'll see you back in

2    August, okay?

3        Have a good day.

4            MR. MEIER:  Thank you, Judge.

5        (Proceedings concluded at 2:48 p.m.)

6

7                    C E R T I F I C A T E

8        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

9    THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

10

11    ____s/Terri L. Horton_____        _October 23, 2023___
      Terri L. Horton, RMR, CRR            Date
12    Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25